[relates to Docket Item #4]

THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DONALD STEPHEN JOHNSON,

                 Petitioner,

      v.

UNITED STATES OF AMERICA,

                Respondent.

HON. JEROME B. SIMANDLE

Civil Action
No. 06-4475 (JBS)

**OPINION**

APPEARANCES:

Donald Stephen Johnson
#40759-050
FCC Coleman-USP
P.O. Box 1033
Coleman, FL 33521
     Plaintiff pro se

Christopher J. Christie
United States Attorney
     By:  Diana V. Carrig and Norman Joel Gross
          Assistant United States Attorney
OFFICE OF THE U.S. ATTORNEY
401 Market Street, Fourth Floor
Camden, New Jersey 08101
     Attorney for the Respondent

**SIMANDLE**, District Judge:

     This case comes before this Court on the motion of the

United States to dismiss Petitioner's Motion to vacate, set

aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  For

the reasons explained below, the Court shall grant the United States' motion and dismiss Petitioner's § 2255 petition.

I.    **BACKGROUND**

   **A. Petitioner's Claims**

   Petitioner, Donald Stephen Johnson, was sentenced by the undersigned to a term of imprisonment of 132 months following the execution of a written plea agreement, under which Petitioner pled guilty to thirteen counts of bank robbery.  Petitioner now brings this pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, arguing that (1) he was erroneously classified as a "career offender" and (2) his trial counsel was constitutionally ineffective.

   With regard to his first claim, Petitioner contends that "the two convictions used to form the basis for [Petitioner's] career offender status were consolidated for sentencing and therefore became related."  (Pet'r Mot. at 3.)  On the basis of this assertion, Petitioner argues that the two convictions and sentences "should have been counted as one" and hence failed to establish the "two prior felony convictions" necessary for a career offender classification.  (Id.)

   On Petitioner's second contention, he claims that his trial attorney failed to render effective assistance because he did not "follow-up on client's insistence that [Petitioner] should not be

2

classified as a career offender." (Id. at 5.)  Petitioner
maintains that:

> Trial counsel knew or should have known that his
> failure to properly investigate those matters
> which gave rise to the "career offender" status
> could and did mandate that [Petitioner] receive a
> higher criminal history category and offense
> level.  Further, this action or inaction affected
> the length of sentence for the offense level the
> court used to depart downward.

(Id.)

The Court shall deny this petition in its entirety because
Petitioner knowingly and voluntarily waived his right to file a
habeas petition and expressly stipulated to the "career offender"
classification in his plea agreement.  Furthermore, for the
reasons explained below, even if the Court were to address
Petitioner's claims, they would fail on the merits.

**B. Facts**

This matter first came before this Court on November 23,
2004 upon Petitioner's guilty plea on a two-count Information
that charged him with two bank robberies.  In addition, an
eleven-count District of Maryland Information that charged him
with eleven bank robberies was sent to this Court pursuant to
Rule 20 of the Federal Rules of Civil Procedure.  Petitioner
waived his right to have that Information venued in Maryland.
(Rule 11 Hr'g at 5, Ex. F to Resp't Br.)  Petitioner pled guilty
to both Informations before this Court.  (Written Plea Agreement
at 1, Ex. E to Resp't Br.)  In his guilty plea, Petitioner

3

stipulated that he is "a career offender" and his criminal history category placed him in "Category VI."  (Id. at 8.)  Specifically, stipulation 7 of Schedule A of the written plea agreement dated August 26, 2004 states, "Donald Stephen Johnson is a career offender under U.S.S.G. § 4B1.1.  Accordingly, Donald Stephen Johnson's criminal history category is a Category VI."

The Court engaged in an extensive colloquy with Petitioner before accepting his guilty plea.  After Petitioner initially indicated that he was not willing to stipulate to the career offender classification as agreed to in the written plea, the Court recessed to give him time to confer with his attorney, Michael Milstead, Esquire.  Petitioner initially thought that his prior state convictions were not to be counted separately for purposes of evaluating his criminal history.  Upon counsel's explanation that the two crimes were in fact separate offenses and treated as such for the purpose of evaluating his criminal history category, Petitioner stated that he understood the source of his confusion and proceeded to enter his guilty plea with that understanding.  (Rule 11 Hr'g at 42-43, Ex. F to Resp't Br.)  In the subsequent colloquy after the Court reconvened, Petitioner stated his agreement that he is a career offender under the Guidelines.  (Rule 11 Hr'g at 42-43, Ex. F to Resp't Br.)  The plea agreement also provided that Petitioner was accountable for all thirteen bank robberies, resulting in an offense level of

4

thirty-three pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 2B3.1, 3D1.2, and 3D1.4.  The parties stipulated that Petitioner would receive a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and an additional decrease of one level pursuant to U.S.S.G. § 3E1.1(b) for timely assisting authorities in the investigation or prosecution of his misconduct.  These reductions were conditioned upon Petitioner's continued acceptance of responsibility and resulted in a total offense level of thirty.

Additionally, Petitioner voluntarily waived the right to collaterally attack his sentence under 28 U.S.C. § 2255, provided that the total offense level determined by the Court was equal to or less than thirty.[1]

---

[1]   Specifically, Stipulation 12 of Schedule A of the written plea agreement letter dated August 26, 2004 (Ex. E to Resp. Br.), which Petitioner acknowledged during the Rule 11 hearing having read, discussed with his attorney, understood, and voluntarily executed, states as follows:

> Donald Stephen Johnson knows that he has, and voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which (a) challenges the sentencing court's authority to sentence under the Sentencing Guidelines in accordance with the stipulations above, (b) claims that the facts found pursuant to these stipulations must be charged in the indictment, submitted to a jury, or proven beyond a reasonable doubt, or (c) challenges the sentencing court's determination or imposition of the offense level if the total

5

Thereafter, the United States Probation Office ("Probation") prepared a Presentence Investigation Report ("Presentence Report"), which corresponded with the parties' stipulation of a total offense level of thirty.  Furthermore, Probation found that Petitioner had amassed sixteen criminal history points, resulting in a Criminal History Category VI.  Additionally, the Presentence Report found that due to his prior offenses for crimes of violence described below, Petitioner met the criteria of a "career offender," which put him, independently, within Criminal History Category VI.

Prior to committing the thirteen bank robberies in this case, Petitioner sustained nine convictions as an adult in Virginia and Maryland - two were determined to qualify as predicate offenses for the "career offender" classification.  The first took place on October 23, 1997, when he was arrested and

offense level determined by the court is equal to or less than 30.  The United States will not file any appeal, motion, or writ that challenges the sentencing court's determination or imposition of the offense level, if the total offense level determined by the court is equal to or greater than 30. The provisions of this paragraph are binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein.  Furthermore, if the sentencing court accepts a stipulation, both parties waive the right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court erred in doing so.

charged with first degree robbery with a deadly weapon, second degree assault, and other crimes, for robbing a restaurant with a knife and escaping in a stolen vehicle ("restaurant assault"). (Presentence Report at 27.)  On June 18, 1998, the Circuit Court of Baltimore City found Petitioner guilty of assault and sentenced him to two years of imprisonment.  (Id.)  The second predicate conviction was for robbery with a deadly weapon when he threatened a convenience store clerk with a knife and took money from the cash register ("store robbery").  (Presentence Report at 28.)  Petitioner was arrested on November 13, 1997.  (Id.)  The Circuit Court of Baltimore County, Maryland sentenced him on April 29, 1998 to twelve years of imprisonment, all but five years suspended.  (Id.)

     Petitioner was sentenced in this case on September 22, 2005. (Ex. G to Resp't Br.)  Petitioner did not object to any of the findings contained in the Presentence Report.  The Court adopted those findings, thereby establishing a guideline range of 168 to 210 months of imprisonment.  The Government filed a motion for a downward departure pursuant to U.S.S.G. § 5K1.1 due to Petitioner's substantial assistance in the investigation of the instant robberies.  The Court gave substantial reasons for the sentence after careful consideration.  (Id. at 57-65.)  The Court granted the motion and sentenced Petitioner to 132 months of

7

imprisonment.  The Judgment and Conviction Order was entered on September 26, 2005.  (Ex. H to Resp't Br.)

Petitioner never filed a direct appeal of his conviction or sentence. On September 19, 2006, Petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255. For the reasons now explained, the petition will be denied in its entirety.

## III. STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the [Petitioner]." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d. Cir. 1997).  The Court need not, however, lend

credit to a pro se [Petitioner's] "bald assertions" or "legal conclusions." Id.  Thus, "[a] pro se complaint may be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).  More specifically, Petitioner's habeas corpus petition can be dismissed if it appears from the face of the petition that the petitioner is not entitled to relief. See Lonchar v. Thomas, 517 U.S. 314, 320 (1996); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989). See also 28 U.S.C. §§ 2243, 2255.

## IV. DISCUSSION

### A. Waiver of the Right to File § 2255 Petition

Petitioner knowingly and voluntarily waived his right to file the instant petition.  On November 23, 2004, Petitioner pled guilty pursuant to a written plea agreement under which he voluntarily waived his right under 28 U.S.C. § 2255 to challenge the sentencing court's determination or imposition of the offense level, provided that the total offense level determined by the Court was equal to or less than an offense level of thirty.  A total offense level of thirty was computed in the Presentence Report and adopted by the Court at the sentencing hearing.  The waiver of collateral attack was therefore triggered, precluding

Petitioner from filing this petition.

The Third Circuit Court of Appeals has ruled "waivers of appeals are generally permissible if entered into knowingly and voluntarily, unless they work a miscarriage of justice." United States v. Khattak, 273 F.3d 557, 558, 560 (3d Cir. 2001) (noting that "ten other Courts of Appeals have held that such waivers are generally valid"). In determining whether the waiver of appeal was knowing and voluntary, Khattak held the sentencing judge's compliance with the requirements of Federal Rule of Criminal Procedure 11 "is critical." See id. at 563; see also Fed. R. Crim. P. 11. An "error amounting to a miscarriage of justice may invalidate the waiver," but that would be an "unusual circumstance." Id. at 562. Factors indicating such an error are its character and gravity, as well as "the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." Id. at 563 (citing United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001).

Although the Third Circuit has not addressed whether the standard it established in Khattak applies equally to waivers of collateral attack, it indicated in a non-precedential opinion that it does. See United States v. Perry, 142 Fed. Appx. 610 (3d Cir. 2005) (affirming district court's denial of a § 2255 petition based on waiver of collateral attack); see also United

10

States v. Wilson, 429 F.3d 455, 461 n.6 (3d Cir. 2005) (refusing
to decide "the effect of the provision in the plea agreement
waiving the right to take a collateral appeal" while noting that
"this court has not addressed that issue").  Courts in this
district have routinely used Khattak to enforce such waivers.
See, e.g., Sanpietro v. United States, No. 05-5550, LEXIS 88693,
at *16 (D.N.J. Dec. 5, 2006) ("Khattak is equally applicable to
waivers of the right to collaterally attack a sentence pursuant
to § 2255.  To hold otherwise. . . would result in a mockery of
the judicial system by affording criminal defendants the benefits
of plea agreements, while shielding them from their own promises
made under such agreements"); Prado v. United States, No. 05-
0938(JBS), 2005 U.S. Dist. LEXIS 32261, at *2 (D.N.J. June 27,
2005); Moore v. United States, No. 04-4731(JBS), 2005 WL 1458640,
at *4-5 (D.N.J. June 15, 2005).

    At least five other Circuit Courts have also held such
waivers are permissible.  See, e.g., United States v. Cockerham,
237 F.3d 1179, 1183 (10th Cir. 2001) (concluding that "a waiver
of collateral attack rights brought under § 2255 is generally
enforceable where the waiver is expressly stated in the plea
agreement and where both the plea and the waiver were knowingly
and voluntarily made"); United States v. Wilkes, 20 F.3d 651, 653
(5th Cir. 1994) (same); Watson v. United States, 165 F.3d 486,
488-89 (6th Cir. 1999) (same); Mason v. United States, 211 F.3d

1065, 1069 (7th Cir. 2000) (same); <u>United States v. Pruitt</u>, 32 F.3d 431, 433 (9th Cir. 1994) (same).

In this case, the record reflects that the Court took all reasonable steps to ensure that Petitioner's waiver of his § 2255 rights was knowing and voluntary. First, Petitioner signed a Rule 11 form acknowledging that under his plea agreement he waived his right to appeal or collaterally attack the sentence imposed. (Rule 11 Form at 6). Second, Petitioner executed his written plea agreement which emphasized his waiver of appeal and post-sentencing rights in the body of the agreement (Ex. E at 4-5) and in the written stipulations attached thereto. (<u>Id.</u> at Stipulation 12, at 8-9.) Third, the Petitioner actually re-read his waiver of appeal and collateral attack in Stipulation 12 during his Rule 11 colloquy and indicated he understood it. (Ex. F at 43:16 to 44:9.) Fourth, the Court orally questioned Petitioner at length during his Rule 11 hearing about his waiver of rights of appeal and of collateral attack under § 2255 as set forth in his written plea agreement (<u>Id.</u> at 44:10 to 47:9). Fifth, Petitioner acknowledged and the Court found that his waiver of § 2255 rights was knowingly and voluntarily given as part of his negotiated plea agreement. Sixth, Petitioner failed to object to any of the findings in the Presentence Report adopted by the Court. In fact, to date Petitioner has never claimed that his waiver was unknowing or involuntary, and has

made no allegation that he misunderstood the nature or effect of the waiver provision he acknowledged and accepted in the plea agreement.

Additionally, there was no particular sentencing error that would work a miscarriage of justice. <u>See</u> <u>Khattak</u>, 273 F.3d at 563 (stating that otherwise valid waivers of appeal could be vacated when sentencing error occurred). Petitioner did not object to the findings contained in the Presentence Report adopted by the Court and the ultimate sentence imposed was substantially below the Guideline sentencing range. <u>See</u> <u>Rita v. United States</u>, No. 06-5754, 2007 WL 1772146, at *3 (U.S. June 21, 2007) (upholding Fourth Circuit's decision that a sentence "imposed within a properly calculated United States Sentencing Guidelines range" is given a presumption of reasonableness). Furthermore, but for Petitioner's extensive cooperation with the authorities, this Court found that Petitioner's extensive criminal history might merit <u>upward</u> rather than downward departure from the Sentencing Guidelines. (Sentencing Hr'g Tr. at 23, 63.)

Because Petitioner knowingly and voluntarily waived his right to attack the sentencing court's determination under § 2255, and because enforcing the waiver does not work a miscarriage of justice, the instant petition will be denied.

**B. Express Stipulation to the "Career Offender" Classification in Petitioner's Plea Agreement**

13

Although Petitioner now challenges the Court's classification of him as a career offender, he expressly stipulated to that classification in his written plea agreement. Petitioner further acknowledged during the Rule 11 hearing that he had read the agreement,[2] discussed it with his attorney,[3] understood its implications,[4] and voluntarily executed it.[5] After stipulating to the classification, Petitioner may not raise a post-sentencing challenge to this Court's adoption of the stipulation. United States v. Cianci, 154 F.3d 106, 110 (3d Cir. 1998); United States v. Melendez, 55 F.3d 130, 136 (3d Cir. 1995); United States v. Parker, 874 F.2d 174, 177-78 (3d Cir. 1989).  Petitioner's instant petition challenging his career

---

[2]  The Court asked Petitioner, "have you read this plea agreement?"  In response, the Petitioner answered: "Yes, I have, sir."  (Rule 11 Hr'g at 18, Ex. F to Resp't Br.)

[3]  The Court asked Petitioner, "have you discussed the charges at length with your attorney?"  In response, the Petitioner answered: "Yes, sir."  (Rule 11 Hr'g at 17, Ex. F to Resp't Br.)

[4]  The Court asked Petitioner the following questions in the context of the thirteen stipulations in his plea agreement: "and do you understand what that mean[s]?" and "are the stipulations true and correct to the best of your knowledge?"  The Petitioner responded "Yes, sir" and "Yes, they are, sir," respectively. (Rule 11 Hr'g at 18, Ex. F to Resp't Br.)

[5]  The Court asked Petitioner the following questions: "and do you accept this plea agreement?" and "are you pleading guilty of your own free will?"  The petitioner responded "Yes, sir" to both questions.  (Rule 11 Hr'g at 18-19, Ex. F to Resp't Br.)

14

offender classification directly contradicts his express stipulation, and is thereby precluded.

**C. Merits of the Claim**

Although Petitioner waived his right to collaterally attack his sentence and is otherwise precluded from challenging a classification to which he expressly stipulated, even if the Court considered Petitioner's claims, they would fail on the merits.

### 1. Career Offender Classification

Petitioner first claims that "the two convictions used to form the basis for [his] career offender status were consolidated for sentencing and therefore became related." (Pet'r Mot. at 3-4.) On the basis of this assertion, Petitioner argues that the two convictions and sentences "should have been counted as one" and hence the "two prior felony convictions" required for a career offender classification were not established. (Id. at 3.)

The career offender classification is governed by U.S.S.G § 4B1.1(a), which provides that a defendant is a career offender if (1) he was at least eighteen years old at the time he committed the instant offense; (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S. Sentencing Guidelines § 4B1.1(a) (2002). A "crime of

15

violence" includes aggravated assault and robbery.  U.S. Sentencing Guidelines § 4B1.1, app. n.1 (2002).  The term "two prior felony convictions" requires that at least two of the sentences for defendant's prior felony convictions be "counted separately under the provisions of 4A1.1(a), (b), or (c)." U.S. Sentencing Guidelines § 4B1.1(a) (2002).

A sentencing judge must "count all those [sentences] that are 'related' to one another" as a single prior felony conviction.  Buford v. United States, 532 U.S. 59, 60-61 (2001), U.S. Sentencing Guidelines § 4A1.2(a)(2) (1993).  Prior convictions are not considered related if the offenses were "separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)."  U.S Sentencing Guidelines § 4A1.2, app. n.3 (1993). However, the absence of an intervening arrest is not dispositive to the issue of "relatedness" of the crimes.  See United States v. Beckett, 208 F.3d 140, 147 (3d Cir. 2000) (affirming lower court's decision that defendant's two prior robberies were not related even though he was arrested on same day for both offenses).  If there is no intervening arrest, prior sentences are related only if the crimes (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.  U.S. Sentencing Guidelines § 4A1.2, app. n.3 (1993).  Petitioner bears the burden of proving

error in a habeas corpus proceeding.  <u>United States v. Hollis</u>, 569 F.2d 199, 205 (3d Cir. 1977).

Petitioner does not dispute that the instant bank robberies fall within the definition of "crimes of violence" or that he was at least eighteen years old when he committed the predicate crimes giving rise to the career offender designation he challenges.  Furthermore, he does not contest that both of these crimes - the restaurant assault and store robbery - are "crimes of violence" within the meaning of U.S.S.G. § 4B1.1. Petitioner's only assertion is that the two prior offenses were "consolidated for sentencing and therefore became related" and pursuant to U.S.S.G. § 4A1.2(a)(2) "should have been counted as one."

Petitioner's contention that his assault and robbery convictions were "consolidated for sentencing," is not supported by the record.  The Presentence Report indicates that Petitioner was sentenced on the store robbery conviction on April 29, 1998 and the assault conviction on June 18, 1998, approximately six weeks later.

Furthermore, Petitioner failed to satisfy his burden of proving that the two prior offenses were otherwise related and "should have been counted as one."  <u>U.S. Sentencing Guidelines</u> § 4A1.2, app. n.3 (1993).  In support of his contention, Petitioner's sole evidence is his own affidavit stating that he

was first arrested on October 23, 1997, and while still in
custody he was subsequently charged with the store robbery on
November 11, 1997.  Accepting this as true, Petitioner's two
prior felony convictions were thus not separated by an
intervening arrest.  However, Petitioner did not present evidence
to show that these offenses "occurred on the same occasion" or
were "part of a single common scheme."  It is possible that while
he was incarcerated for one crime, the Maryland police gathered
sufficient evidence to charge him with the other.  The fact that
he was not sentenced on the same date for these crimes also
indicates that they were not related in the eyes of Maryland
authorities.  In fact, the record shows that the two offenses
were committed on different dates, against different victims, at
different locations and sentenced separately.  Additionally,
Petitioner has not attempted to show that the two offenses were
part of a common scheme, that they were "jointly planned," or
that "the commission of one would entail the commission of the
other as well."  Beckett, 208 F.3d at 147.  Furthermore,
Petitioner declined this court's invitation to submit an amended
motion that would remedy these defects.  (See Notice and Order
dated Sept. 25, 2006).  Hence, this Court did not err by treating
these prior offenses separately for purposes of the career
offender determination.

18

Therefore, even if the Court considered Petitioner's claim on the merits, he would fail to carry his burden of proving that his prior predicate offenses were sufficiently related and his instant petition would be denied.

2. <u>Ineffective Assistance of Counsel</u>

Petitioner further claims that his counsel was constitutionally ineffective for failing to follow-up on Petitioner's insistence that he should not be classified as a "career offender," and that counsel's failure to argue this point led to this Court's adoption of a higher criminal history category and offense level, which in turn affected the length of his sentence.  (Pet'r Mot. at 5.)

To establish a viable claim of ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient; and (2) counsel's deficient performance prejudiced the defense.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).

The first prong of <u>Strickland</u> requires a showing that counsel made errors so serious that the right to counsel guaranteed by the Sixth Amendment essentially was not provided. <u>Strickland</u>, 466 U.S. at 687.  The proper standard for judging attorney performance is that of reasonably effective assistance. <u>Id.</u> at 687.  Judicial scrutiny of counsel's performance must be highly deferential and the Petitioner must overcome a strong presumption that counsel's actions were sound given the

19

circumstances.  Id. at 689.  Importantly, an attorney cannot be faulted for failing to pursue meritless or futile objections. Johnston v. Love, 940 F. Supp. 738, 776 (E.D. Pa. 1996), aff'd, 118 F.3d 1576 (3d Cir. 1997).  See Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir.), cert. denied, 513 U.S. 1022 (1994) (failure to raise non-meritorious issues does not constitute ineffective assistance of counsel); Thomas v. United States, 951 F.2d 902, 904 (8th Cir. 1991) (defense counsel not ineffective for failing to raise meritless objections); United States v. Lawson, 947 F.2d 849, 853 (7th Cir.1991), cert. denied, 503 U.S. 948 (1992) (same).

In this case, Petitioner fails to satisfy either prong of Strickland and his claim of ineffective assistance of counsel fails.  See United States v. Nino, 878 F.2d 101 (3d Cir. 1989) (holding habeas petitioner seeking to vacate sentence due to counsel's post-conviction actions must satisfy both prongs set forth in Strickland).  As previously discussed, Petitioner's challenge to the career offender classification is without merit. Counsel's performance, therefore could not be deficient.

Nor could such failure possibly have prejudiced Petitioner because his sentence was not affected by the classification. There is no dispute that Petitioner had amassed sixteen criminal history points in the current string of robberies to which he pled, resulting in a Criminal History Category of VI, see U.S.

Sentencing Guidelines Manual ch. 5, pt. A, regardless of whether
or not the career offender classification properly applied to
him.  (Presentence Report at 29.)  Thus, counsel's decision not
to object to this classification had no effect on Petitioner's
eventual criminal history category.

      Moreover, counsel's action did not increase Petitioner's
total offense level.  Petitioner's guilty plea stipulated that
his total offense level for the instant bank robberies, without
regard to downward adjustments for acceptance of responsibility,
was thirty-three.  (Presentence Report at 25.)  This offense
level is in excess of the applicable offense level under the
career offender classification - also calculated without
consideration of downward adjustments - which is thirty-two.[6]
Thus, just as the career offender classification did not increase
the Petitioner's criminal history category, the classification
also did not increase his total offense level either.  Hence,
Petitioner's career offender classification had no adverse effect

---

      [6]  This offense level is determined as follows.  Under 18
U.S.C. § 2113(a), the statutory maximum sentence for each of
Petitioner's bank robbery convictions was twenty years.
According to the table in U.S.S.G. § 4B1.1(b), the applicable
offense level for a career offender committing a crime punishable
with statutory maximum imprisonment of "20 years or more, but
less than 25 years" is thirty-two.

in terms of his sentencing guideline range.  Petitioner sustained no prejudice as a result of his career offender classification.[7]

Petitioner hence fails to demonstrate that counsel's performance was deficient or that he suffered prejudice.  Thus, were the Court to consider his claim on the merits, it would fail.

## V. CONCLUSION

For the foregoing reasons, Mr. Johnson's petition for writ of habeas corpus will be dismissed.  The accompanying Order is entered.

**July 10, 2007**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
U.S. District Judge

---

[7]  Given all the circumstances of this case, the Court is constrained to observe how misplaced this Petitioner's allegation of ineffective assistance truly is.  Mr. Milstead in fact assisted Petitioner in achieving an outstanding result helping to negotiate a plea agreement with Federal prosecutors in two districts, which consolidated two New Jersey bank robberies and nine Maryland bank robberies for purposes of sentencing, with no charges for his repeated use of firearms in commission of the robberies which would have entailed mandatory consecutive sentences under 18 U.S.C. § 924(c).  Petitioner's cooperation, although early and truthful, provided only cumulative evidence. Mr. Milstead succeeded in obtaining a favorable reduction of charges and of the sentence from what it otherwise could have been.